UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BIG 3 PRECISION PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-01207-JRS-TAB |
| | ) | |
| STARPLUS ENERGY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant StarPlus Energy LLC asks the Court to stay this case and order Plaintiff Big 3 Precision Products, Inc. to arbitrate the dispute between them. [Filing No. 15.] StarPlus contends that all disputes arising from the parties' business relationship, including those raised in the amended complaint, are subject to an arbitration clause contained in a contract entitled "General Terms and Conditions of Purchase Equipment and Materials" ("Terms and Conditions") redlined and signed by Big 3. Big 3 argues that the arbitration clause is not effective because StarPlus never countersigned the Terms and Conditions, and a jury waiver provision preserves the right to a bench trial, despite the arbitration clause. [Filing No. 21.] However, neither Indiana law nor the Terms and Conditions established mutual execution as the sole manner of acceptance of the contract. The parties manifested assent to the Terms and Conditions' unambiguous and uncontradicted arbitration clause. Therefore, the Court grants StarPlus's motion to compel arbitration and stay proceedings pending arbitration. [Filing No. 15.]

## I. Background

StarPlus, a producer of electric vehicle batteries, previously agreed to buy custom-designed dunnage trays from Big 3 to store its batteries. In October 2025, StarPlus terminated the parties' business relationship, leading Big 3 to file this breach of contract case. [Filing No. 8.] There are multiple instruments relevant to the parties' business relationship.

According to Big 3's amended complaint, "[t]he parties memorialized their agreement in a Letter of Intent ("LOI"), pursuant to which Big 3 agreed to own, fund, and maintain the tooling required to manufacture the returnable dunnage trays, and [StarPlus], in exchange agreed to purchase 38,750 units of trays." [Filing No. 8, at ECF p. 5.] The letter of intent is dated November 20, 2023. Only StarPlus signed it. The letter of intent incorporates a signed quote from Big 3 dated October 25, 2023. The letter of intent states that the "General Purchase Agreement of StarPlus Energy LLC and other associated agreements, which have been provided to the Supplier, shall apply to the order above." [Filing No. 8-1, at ECF p. 1, 3.]

The amended complaint alleges that, "[w]ith respect to the formation of the parties' business relationship," StarPlus provided Big 3 with its standard General Terms and Conditions of Purchased Equipment and Materials, "which Big 3 redlined, executed, and returned on or about May 16, 2024." [Filing No. 8, at ECF p. 6.] The amended complaint incorporates the redlined Terms and Conditions, the preamble of which reads as follows:

> These General Terms and Conditions of Purchase of Equipment and Materials (these "Terms and Conditions") are entered into as of the Effective Date, by and between StarPlus Energy LLC, a Delaware limited liability company (collectively with its Affiliates, "Purchaser"), and Big 3 Precision Products, Inc. a provider of returnable packaging to StarPlus Energy, the party to whom the applicable Purchase Order is addressed (collectively with its Affiliates "Seller"). [. . .] These Terms and Conditions shall apply to each Purchase Order for Equipment and Materials (together, "Direct Materials") to which these Terms and Conditions are attached or which references these Terms and Conditions and shall be deemed to be incorporated by reference therein[.]

[Filing No. 8-2, at ECF p. 1 (underlining and redlining original).] With its redlining, Big 3 revised many provisions in the Terms and Conditions that it signed.

However, Big 3 did not alter the following dispute resolution provision, containing an arbitration clause and jury trial waiver provision:

> 20. **Governing Law; Dispute Resolution**
>
> 20.1 Governing Law and Dispute Resolution. The Contract shall be governed by and construed in accordance with the laws of the State of Indiana, without regard to its conflicts of law provisions. [. . .] All disputes arising out of or in connection with this Contract shall be finally settled under the Rules of Arbitration (the "Rules") of the International Chamber of Commerce ("ICC"), which Rules are deemed to be incorporated by reference into this Section. [. . .] Any arbitration proceeding conducted pursuant to this Contract shall take place in Indiana, being the legal seat of the arbitration, and shall be conducted in English. The decision or award of the arbitrators shall be in writing and shall be final and binding on the Parties.
>
> 20.2 WAIVER OF JURY TRIAL. THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY AND THAT ANY ACTION OR PROCEEDING WHATSOEVER BETWEEN THEM RELATING TO THIS AGREEMENT SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

[Filing No. 8-2, at ECF p. 23.] Only Big 3 signed the Terms and Conditions. However, Section 1.2 of the Terms and Conditions states that a binding contract is formed when both parties sign or upon "the Seller's acceptance of a Purchase Order (as specified in Section 1.1(b))[.]" [Filing No. 8-2, at ECF p. 1.] Section 1.1(b) allows the Seller to accept a purchase order via written acceptance, shipping materials, or "any other conduct of the Seller that recognizes the existence of a contract regarding the subject matter." [Id.]

StarPlus first issued purchase orders to Big 3 for custom dunnage trays in early November 2024. [Filing No. 8, at ECF p. 6.] Big 3's claims pertain primarily to two purchase orders: (1) an April 10, 2025, purchase order for 10,080 units, totaling $4,240,756, and (2) a June 17, 2025, order to expedite the April 10 order for an additional $59,000. [Filing Nos. 8-3, 8-4.] Like the letter of intent, both orders contain the following language incorporating other instruments: "Specifications, General Purchase Agreement of StarPlus Energy and other associated agreements, which have been provided to the Supplier, shall apply to the order above." [Filing Nos. 8-3, at ECF p. 2; 8-4, at ECF p. 1.] The June 17 purchase order contained the following additional language: "This purchase order constitutes an offer of purchase which may only be accepted subject to Buyer['s] standard terms and conditions of purchase. If Seller does not have a copy of these terms and conditions of purchase, Buyer will provide a copy upon request. Any expression of acceptance from Seller will constitute acceptance of these terms and conditions of purchase." [Filing No. 8-4.]

Big 3's amended complaint alleges that "Big 3 accepted those Purchase Orders and began performance in reliance on them." [Filing No. 8, at ECF p. 7.] Big 3 alleges that, by the end of May 2025, it had shipped 31 truckloads of dunnage trays to StarPlus. [Filing No. 8, at ECF p. 8.] In June 2025, StarPlus instructed Big 3 to reduce or cease further shipments. [Filing No. 8, at ECF p. 9.] On October 28, 2025, StarPlus wrote Big 3 to formally terminate the business relationship. [Filing No. 8-7.] In this lawsuit, Big 3 asserts a breach of contract claim based on the April and June 2025 purchase orders, as well as related declaratory judgment and U.C.C. claims. [Filing No. 8.]

## II. Discussion

StarPlus, as the party seeking to compel arbitration, must show "'(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration.'" *Rose v. Mercedes-Benz USA, LLC*, 167 F.4th 975, 978 (7th Cir. 2026) (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). State law principles of contract determine whether parties have agreed to arbitrate. *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). Both parties' briefs apply Indiana law. Indiana has a "robust policy" favoring enforcement of arbitration clauses. *Ill. Cas. Co. v. B&S of Fort Wayne Inc.*, 235 N.E.3d 827, 832 (Ind. 2024). Indiana courts interpreting arbitration agreements construe "every doubt . . . in favor of arbitration" and bind parties to "arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Showboat Marina Casino Partnership v. Tonn & Blank Const.*, 790 N.E.2d 595, 598 (Ind. Ct. App. 2003) (quoting *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)).

An agreement to arbitration requires mutual assent. *See Browning v. Trans Union LLC*, No. 4:24-cv-00029-TWP-KMB, 2025 WL 1503973, at *2 (S.D. Ind. May 27, 2025). "The validity of a contract is not dependent on the signature of the parties; rather, '[a]ssent to the terms of a contract may be expressed by acts which manifest acceptance.'" *Id*. at *3 (quoting *Int'l Creative Mgmt., Inc. v. D & R Ent. Co.*, 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996)); *see also* Ind. Code § 26-1-2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."). Indiana courts have found that performance pursuant to a partially executed contract can establish acceptance of its terms—including arbitration clauses—and bind the parties. *See Stardust Ventures, LLC v. Roberts*, 65 N.E.3d 1122, 1126-28 (Ind. Ct. App. 2016) (enforcing an

arbitration clause in a contract alleged to be signed by only one party where the non-signing party manifested its assent by drafting the contract and acting consistent with the contract); *Int'l Creative Mgmt., Inc.*, 670 N.E.2d at 1312-13 (remanding to compel arbitration where the parties' actions pursuant to the terms of the contract manifested their intent to bind themselves to the contract even though one party did not sign it).

Here, there is mutual assent according to the language of the Terms and Conditions, as well as conduct manifesting assent. Section 1.2(b) of the Terms and Conditions creates a binding contract absent mutual execution once the seller accepts a purchase order. It is undisputed that Big 3 accepted StarPlus's purchase orders. Moreover, the parties' conduct also demonstrates acceptance of the Terms and Conditions. StarPlus drafted the Terms and Conditions. Big 3 redlined, executed, and returned the Terms and Conditions—leaving its arbitration clause unaltered. The parties then moved forward with the procurement described in the Terms and Conditions. Specifically, StarPlus issued purchase orders, including the April and June 2025 purchase orders, that invoked the Terms and Conditions, and Big 3 accepted and began to fill those purchase orders.[1]

As to the terms of the parties' agreement, Indiana Code § 26-1-2-207(3) states:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise

---

[1] Big 3 takes issue with the fact that the purchase orders do not have the Terms and Conditions attached and state they are subject to the "General Purchase Agreement" and "other associated agreements, which have been provided to the Supplier," not the Terms and Conditions' formal title "General Terms and Conditions of Purchase Equipment and Materials." [Filing No. 21, ECF p. 10-12.] However, there is no evidence of any actual confusion as to whether the purchase orders referred to any document other than the Terms and Conditions that Big 3 redlined, signed, and returned. Moreover, "[t]here is no requirement that an arbitration clause be included in all potentially relevant documents to be binding if it covers the dispute at hand. [. . .] As long as one agreement between two parties includes an agreement to arbitrate, that is enough to bind both parties to that undertaking." *Isp.com LLC v. Theising*, 805 N.E.2d 767, 776 (Ind. 2004) (internal citations omitted).

> establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

In the present case, the parties exchanged versions of the Terms and Conditions that were not identical. StarPlus provided its standard version, and Big 3 returned a version containing redlined revisions. However, the dispute resolution provision, including the arbitration clause, is the same in both—without any redlining. Therefore, the parties are bound by the "terms on which the writings of the parties agree"—which in this case, includes the arbitration clause. *See Id.*

Big 3 argues that, regardless of the existence of a binding agreement, the arbitration clause is unenforceable because it conflicts with the jury waiver provision. [Filing No. 21, at ECF p. 19-21.] However, as StarPlus points out, courts interpret contracts "as a whole and, where reasonably possible, give effect to every provision." [Filing No. 24, at ECF p. 13.] "Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. The entire contract must be read together and given meaning, if possible." *Showboat Marina Casino*, 790 N.E.2d at 597 (citing *Mislenkov*, 743 N.E.2d at 290) (internal citation omitted). The dispute resolution provision—when read in its entirety, as quoted above—is not ambiguous or contradictory.

Big 3 emphasizes: (1) language from Section 20.1's arbitration clause stating that all disputes arising out of the Terms and Conditions "shall be finally settled" via ICC arbitration, and (2) select language from Section 20.2's jury waiver provision stating that "any action or proceeding whatsoever between them relating to this agreement shall instead be tried in a court of competent jurisdiction by a judge sitting without a jury." [Filing No. 21, at ECF p. 19-20 (quoting 8-2, at ECF p. 23).] When viewed in isolation, this language appears in tension and

could be viewed as requiring both arbitration and a bench trial. However, as StarPlus aptly explains:

> Section 20.2 is titled "Waiver of Jury Trial" and addresses the forum and manner of any judicial action or proceeding that may properly be brought in court. It does not state that litigation replaces arbitration, does not exclude any claim from arbitration, and does not purport to amend or supersede Section 20.1. The provisions should instead be read together to give effect to both: disputes covered by Section 20.1 must be arbitrated, while any court proceeding authorized or necessary in connection with the parties' relationship proceeds before a judge rather than a jury.

[Filing No. 24, at ECF p. 10-11.] To interpret these provisions otherwise would deprive the arbitration clause of all meaning and violate the canons of contract interpretation discussed in *Showboat Marina Casino*.

While Big 3 relies on *Showboat Marina Casino*, Big 3 fails to acknowledge key differences in the language interpreted in that case. *Showboat Marina Casino* did not involve a jury waiver provision. Rather, it involved an internally conflicting dispute resolution provision that stated that "either party 'may' institute arbitration" and then "most peculiarly" required the parties to resolve all disputes in court. 790 N.E.2d at 597-599. The Indiana Court of Appeals determined that this conflict created ambiguity as to the arbitration requirement and affirmed the trial court's denial of a motion to compel arbitration. *Id.* StarPlus correctly notes, however, that "the language here is materially different. [. . .] Section 20.2 does not direct that disputes be decided in court. Instead, it waives the right to a jury and provides that any action or proceeding that is tried in court will be tried 'by a judge sitting without a jury.'" [Filing No. 24, at ECF p. 13-14.] Thus, Section 20.2's jury waiver provision does not contradict Section 20.1's arbitration requirement.

Moreover, "the mere existence of a provision addressing procedures outside arbitration does not necessarily demonstrate an 'affirmative intention . . . to undo the arbitration

covenant[.]'" *Blimpie Intern., Inc. v. Choi*, 822 N.E.2d 1091, 1095 (Ind. Ct. App. 2005) (quoting *Isp.com LLC v. Theising*, 805 N.E.2d 767, 776 (Ind. 2004)). In *Isp.com*, the Indiana Supreme Court discussed why contracts requiring arbitration often discuss litigation handling:

> It is not uncommon to find both arbitration and forum selection clauses in agreements. [. . .] Several considerations may lead to the inclusion of both. First, and obviously, arbitration may be waived by the parties. [. . .] If they choose, they may prefer to litigate, but be required to do so in a designated forum.

805 N.E.2d at 776-77 (internal citations omitted). Indeed, in *Blimpie Intern., Inc. v. Butterworth*, No. 1:05-CV-0131-JDT-WTL, 2005 WL 756218 (S.D. Ind. Mar. 9, 2005), this Court enforced an arbitration clause, despite a jury waiver provision. The Court explained as follows:

> [T]here are reasons to have both an arbitration agreement and a waiver of jury trial provision. The parties may choose to waive their right to arbitration. If they do, they may prefer a court trial over a jury trial. The waiver of a jury trial right would apply to such claims.

*Id.* at *9. Had both parties here agreed to waive the arbitration requirement, they could have litigated their disputes subject to the jury waiver provision. Contrary to Big 3's argument, there is no ambiguity or conflict that renders the arbitration clause unenforceable.

The scope of the arbitration clause is broad, encompassing "all disputes arising out of or in connection with this Contract." [Filing No. 8-2, at ECF p. 23.] "Broad arbitration clauses [. . .] create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (enforcing an arbitration clause requiring the parties to arbitrate all claims "arising out of or relating to" the parties' agreement). All claims asserted in Big 3's amended complaint pertain to the business relationship described in the Terms and Conditions. [Filing No. 8.] Thus, Big 3's claims fall squarely within the arbitration clause's broad scope.

Having concluded that the arbitration clause applies to Big 3's claims, the Court must stay the proceedings pending arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476-79

(2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceeding.").

## III. Conclusion

Accordingly, StarPlus's motion to compel arbitration and stay proceedings [Filing No. 15] is granted. The Court previously stayed this matter pending resolution of this motion. [Filing No. 25.] That stay is continued pending resolution of the arbitration proceedings. The parties shall file a notice with the Court within seven days of the conclusion of the arbitration.

Date: 9/28/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email